## FULGHUM *v.* WILLIAMS COMPANY.

Where personal property has been duly advertised for sale by a mortgagee in accordance with the terms of a power of sale contained in his mortgage, and, subsequently to such advertisement but prior to the sale, an execution held by a third party against the mortgagor is levied upon the mortgaged property, and the same is seized in pursuance of such levy, and while so held is sold by the mortgagee under his power of sale: *Held*, that a sale of such property by the mortgagee under the power, while the same is in the custody of the sheriff by virtue of such levy, is void, and ineffectual to pass title to the purchaser.

Argued January 8,—Decided February 5, 1902.

Levy and claim. Before Judge Roberts. Pulaski superior court. June 4, 1901.

*Jordan & Watson, W. L. Grice & Sons*, and *J. H. Martin*, for plaintiff. *Eldridge Cutts*, contra.

LITTLE, J. Certain personal property, to wit, a horse, ten mules, wagons, harness, etc., was, on December 8, 1900, levied on by the sheriff of Pulaski county, as the property of G. R. Allison, to satisfy an execution in favor of Fulghum, administrator. J. P. Williams Company filed a claim to the property, and, issue having

been joined, evidence to the following effect was introduced.    On the 30th of November, 1897, J. R. Allison & Company, J. R. Allison, and H. B. Moore executed a mortgage on the property levied on, in favor of J. P. Williams Company, to secure a number of promissory notes given by the mortgagors to the mortgagee.    This mortgage contained a power giving to the mortgagee the right, in case of default in the payments of any of the notes named in the mortgage, to sell the property described, at the court-house door in Hawkinsville, after posting a notice of sale for ten days at the court-house door.    The mortgage also recited that the mortgagee should be allowed to bid at the sale, and to purchase any or all of the property if the same should be sold.    The proceeds were directed to be applied to the indebtedness of Allison & Company, and the surplus, if any, to be turned over to them.    It was also stipulated that the sale of the property, under the power in the mortgage, might take place and be legal without carrying the property to the place of sale.    It was shown that there was a default in the payment of the notes, and on November 27, 1900, the mortgagee through his attorney posted a notice of sale to take place December 8, 1900, in accordance with the terms of the mortgage, and the property was on that day sold in pursuance of that notice and purchased by the claimant.    It further appears that prior to this sale the sheriff of Pulaski county levied the fi. fa. of the plaintiff in error upon this property and took the same into his possession, the levy having been made on the morning of the day that the sale was made by the mortgagee, and before such sale.    Several months prior to the sale, still another execution had been levied on the same property, which was arrested by an affidavit of illegality, which was pending at the time the sale was made.    It was further shown in behalf of plaintiff in fi. fa. that the property was in possession of one of the defendants after the judgment on which his execution issued had been obtained.    The sale by the mortgagee was regular in all respects, and in accordance with the power contained in the mortgage.    Under this evidence the court directed a verdict finding the property not subject, which was accordingly returned by the jury.    Plaintiff in fi. fa. moved for a new trial, which was overruled, and he excepted.    It was claimed in the motion for a new trial that the court erred in directing a verdict for claimant, and that the verdict so rendered was contrary to the evidence.    An ex-

ception was also taken to the exclusion of certain evidence, which, under the view we take of the law governing the case, it is not necessary to consider.

The claimant rested his title to the property on his purchase at the sale under the power contained in the mortgage; and the naked question is presented, whether under such a sale and purchase the claimant derived a valid title to the property. We think not. While freely admitting that under the proper exercise of a power of sale given in a mortgage, the title of the mortgagor is divested, and passes into the purchaser, there is one reason why the sale in the present instance did not have this effect under the circumstances which are shown to have existed at the time it took place. The effect of the mortgage was simply to create a lien on the property mentioned therein, in favor of the claimants, to secure the payment of their debt. It conveyed no title. Under an ordinary mortgage a valid sale of the mortgaged property could only have been had by a foreclosure in the methods pointed out by law, and a sale under the levy of the execution issued thereon. The power given by the mortgagor to the mortgagee to sell the property mortgaged, in case of default by the latter, is but a substitution by agreement of such method in lieu of the ordinary sale under foreclosure (*Mutual Loan Co.* v. *Haas*, 100 *Ga.* 111), and we can not imagine how a sale had under a power given in the mortgage is entitled to any more consideration or has attached to it incidents of a higher dignity than those which attach to a sale under foreclosure. As to the relative rights of third persons, we think they stand on the same footing. The evidence does not show that at the time the sale under the power took place the property had been delivered to the mortgagee. On the contrary, it shows that at the time of such sale the mortgagee was not in possession of the property, but that the same was in the possession of the sheriff who seized it under the levy made under plaintiff's execution. This court has more than once ruled that it was necessary for the full execution of the power of sale contained in a mortgage that the mortgaged (personal) property should be in the possession of the mortgagee so that he may fully effectuate the purposes of the sale by delivering possession to the purchaser. Here the property at the time of the attempted sale was in the possession of an officer of the court who had seized it to satisfy by execution sale a valid

judgment having a lien thereon.    It was therefore in custodia
legis, and, under the rule which obtains in such cases, the posses-
sion of the property by the sheriff who levied on it could not be
disturbed by the levy of another process; and had the mortgagee
in this case foreclosed his mortgage and placed it in the hands of
the sheriff, possession of the property would have remained in that
officer by virtue of the first levy.    Mr. Freeman in the second vol-
ume of his work on Executions, § 268, in treating of the effect of
a levy upon property, says, on authority : " The lien of an execu-
tion gives the officer intrusted with its service no general or special
property in the defendant's goods. . . But the moment that a
levy is made the rights and remedies of the officer are materially
changed ; or, more accurately speaking, he, from that moment, is
vested with rights and entitled to remedies to which he could be-
fore urge no valid claim. . . The officer is entitled to retain
such possession and control of the property as may be necessary to
make it productive under the writ.    The law, therefore, concedes
to him as to a bailee a special property in the goods in his cus-
tody. . . As against strangers to the title, the special property
continues until the officer can redeliver the property to the defend-
ant."    The same author in the same section also says, that another
consequence of taking property under an execution is that it is put
in custody of the law, and can not be levied upon by any officer,
nor can it be replevied from the officer in whose charge it is, by the
defendant, nor by any one claiming title under him subsequently
to the levy.    For this proposition he cites Burkett *v*. Boude, 3
Dana, 213; Rives *v*. Wilborne, 6 Ala. 45 ; Kemp *v*. Porter, 7 Ala.
138; Langdon *v*. Brumby, 7 Ala. 53 ; Hartwell *v*. Bissell, 17 Johns.
128; Bilby *v*. Hartman, 29 Mo. App. 125, and other cases.    The
title upon which the claimant stood in the present case being de-
rived from the defendant by virtue of the sale under the power
given in the mortgage after levy of the execution by the sheriff, if
the proposition laid down by Mr. Freeman be true, the claimant
relying on such title could not have recovered the property levied
on from the sheriff.    It has frequently been ruled that money or
property in the hands of an officer who has collected it under legal
process is not the subject of attachment or of a levy, because it is
in custodia legis.    Hardy *v*. Tilton, 68 Me. 195, 28 Am. Rep. 34;
Turner *v*. Fendall, 1 Cranch, 117.    In Wiswall *v*. Sampson, 14

How. 52, it was ruled that money in the hands of a receiver, being in custodia legis, is exempt from execution or attachment. Also see *Field* v. *Jones*, 11 *Ga.* 413. The rule also embraces money in hands of certain trustees when appointed by the court: Bentley *v.* Shrieve, 4 Md. Ch. 412 ; and assignees in bankruptcy: Jones *v.* Gorham, 2 Mass. 375 ; and sheriffs: Wilder *v.* Bailey, 3 Mass. 289. It was ruled in Hackley's ex'rs *v.* Swigert, 5 B. Mon. 86, that property in the custody of the law can not be levied on, seized or sold under execution. In Wiswall *v.* Sampson, supra, Mr. Justice Nelson, in delivering the opinion of the court, said, on page 68, "that while the estate is in the custody of the court, as a fund to abide the result of a suit pending, no sale of the property can take place, either on execution or otherwise, without leave of the court for that purpose." In the case of Corvell *v.* Heyman, 111 U. S. 176, it was ruled that "The principle that whenever property has been seized by an officer of the court by virtue of its process, the property is to be considered as in the custody of the court, and under its control for the time being, applies both to a taking under a writ of attachment on mesne process and to a taking under a writ of execution." Mr. Justice Matthews, who delivered the opinion of the court in that case, said "that when property is taken and held under process, mesne or final, of a court of the United States, it is in the custody of the law, and within the exclusive jurisdiction of the court from which the process has issued, for the purposes of the writ; that the possession of the officer can not be disturbed by process from any State court, because to disturb that possession would be to invade the jurisdiction of the court by whose command it is held, and to violate the law which that jurisdiction is appointed to administer; that any person not a party to the suit or judgment, whose property has been wrongfully, but under color of process, taken and withheld, may prosecute, by ancillary proceedings, in the court whence the process issued, his remedy for restitution of the property or its proceeds, while remaining in the control of that court; but that all other remedies to which he may be entitled, against officers or parties, not involving the withdrawal of the property or its proceeds from the custody of the officer and the jurisdiction of the court, he may pursue in any tribunal, State or Federal, having jurisdiction over the parties and the subject-matter." See also Connor *v.* Long, 104 U. S. 228.

The principle which we rule as being applicable to the facts of this case under the above authorities is, that when the sheriff of Pulaski county in obedience to the process seized the property in question, no valid sale thereof could afterwards, while the property was in the possession of the court under such seizure, be made under execution or otherwise, unless by leave or order of the court. And inasmuch as the sale under which the claimant derived his title in this case was made after seizure, and while the property was in the possession of the court by its officer, the purchaser took no title. It is not, of course, to be understood that the mortgagee, if he had a prior or superior lien to that of the judgment on which the execution issued, has not the right to enforce his lien, either against the property itself or the proceeds of the same under execution, and in the manner pointed out by our statute. The fact that the mortgage contained a power of sale does not render the exercise of that power the only method of enforcing the lien. *McGuire* v. *Barker,* 61 *Ga.* 339. Therefore no substantial right of the mortgagee is denied by the ruling which is made. When a court having jurisdiction has by proper process taken property into its custody for the purpose of satisfying a judgment against the defendant in fi. fa., while any person having a lien on such property or interested in the proceeds thereof may rightfully come into the court having possession of the property and assert his rights, yet he can not disturb that possession, nor assert as to such property a title which he has acquired subsequently to the seizure. We are not now dealing with the lien which the claimant had to the property by virtue of his mortgage, but only with the title which he insists he has by virtue of the sale made by the mortgagee after the levy. We think he took nothing by that sale, and that the trial judge erred in directing a verdict in his favor.

*Judgment reversed. All the Justices concurring.*